```
               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

Steve Podkulski

   v.                                    Civil No. 11-cv-102-JL

Jane Doe et al.

### REPORT AND RECOMMENDATION

Before the court is pro se plaintiff Steve Podkulski's First Amended Complaint (doc. no. 23), which asserts claims against Sgt. FNU Ballis, Officer FNU Donovan, Officer FNU Hujsak, Sgt. Gordon, Officer Barbera, and a John Doe Corrections Officer and John Doe Sergeant at the Hillsborough County Department of Corrections ("HCDC"). Podkulski filed this amended pleading in response to this court's order (doc. no. 14), directing service of certain claims upon Sgt. Gordon and Officer Barbera and granting Podkulski leave to file an amended complaint elaborating on claims asserted against certain John and Jane Doe defendants alleged to be liable for placing him in a top bunk with knowledge of his seizure condition, and for leaving him in a cell contaminated with human waste. The First Amended Complaint (doc. no. 23) is before the court for preliminary review to determine if Podkulski has stated a claim

upon which relief can be granted.  See 28 U.S.C. § 1915A; United States District Court, District of New Hampshire Local Rule ("LR") 4.3(d)(2) (inmate complaints and subsequent amendments forwarded to magistrate judge for preliminary review).

## Standard of Review

Under LR 4.3(d)(2), the magistrate judge conducts a preliminary review of amendments to initial pleadings filed by incarcerated plaintiffs.  The magistrate judge may issue a report and recommendation thereafter, recommending that claims be dismissed if the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, or the amended pleading fails to state a claim upon which relief may be granted.  See id. (citing 28 U.S.C. § 1915A & Fed. R. Civ. P. 12(b)(1)).  In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if a complaint states any claim upon which relief could be granted, the court applies a standard analogous

to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6).  The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, after filtering out statements that offer only legal conclusions, treating as true all non-conclusory factual allegations, and construing in plaintiff's favor any reasonable inferences drawn therefrom. See Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009)

**Background**

The following statement of background facts is derived from Podkulski's initial complaint (doc. no. 1), supplemented by facts asserted in the First Amended Complaint (doc. no. 23). Podkulski is a prisoner who was detained pretrial at HCDC for a period of time preceding November 29, 2010, and who, for a period of time thereafter, remained incarcerated at HCDC as a convicted prisoner.  The claims in the first amended complaint (doc. no. 23) arise from incidents alleged to have occurred while Podkulski was a pretrial detainee.

While in pretrial detention, on November 17, 2010, Podkulski alleges that he told Sgt. Ballis and Officer Donovan that he was prone to seizures and needed to sleep on the bottom bunk.  Both officers acknowledged his comment by saying, "too

bad," and refused to move him to the bottom bunk.  Later that night, Podkulski had a seizure, fell from the top bunk, and injured his neck and back.

Podkulski alleges that he told Officer Hujsak on November 18, 2010, that, in order to preserve the right to file a lawsuit, Podkulski wanted to file three grievances about violations of his constitutional rights.  On that same day, Podkulski submitted those grievances to Officer Hujsak.  Hujsak said that he would issue a disciplinary report against Podkulski for filing grievances, and a John Doe sergeant, speaking with Podkulski several hours later, told Podkulski that, if he wanted to file grievances, he would be sent to segregation.  According to Podkulski, the sergeant promised to "personally beat the shit" out of Podkulski if he wanted to file grievances.  Podkulski asserts that he stopped pursuing his grievances at that time for fear of being beaten up.

Officer Hujsak filed a disciplinary report against Podkulski, based on Podkulski's grievances.  The facts alleged by Podkulski fail to indicate the nature of the disciplinary charges asserted in that report.  According to Podkulski, the hearings officer found Podkulski guilty on the report and gave him a verbal reprimand.  The hearings officer warned Podkulski

not to pursue grievances unless he wanted to end up in segregation.

Podkulski alleges that, on November 21, 2010, Sgt. Gordon said Podkulski would be sent to segregation and beaten up for explaining to a cellmate how to file grievances and lawsuits. Podkulski was then transported to segregation. Podkulski asserts that he complied with all verbal orders while in segregation.

Podkulski alleges that when he was in the segregation cell, Officer Barbera restrained Podkulski while Sgt. Gordon struck him and maced him in both ears. Podkulski asserts that Barbera said that he was a "leech," that "we don't like grievance and lawsuit filers," and that he was lucky they did not kill him.

Podkulski alleges that, on November 21, 2010, he was placed in a cell that had another inmate's urine and feces on the floor. When Podkulski complained about the human waste to Officer Barbera and another officer, both of them allegedly told him that "this is what you get," and that they would neither transfer him nor clean the cell. On November 24, 2010, Podkulski asked Officer Morales to clean the cell, and Morales did so.

Podkulski filed his initial complaint (doc. no. 1) in this action, and that complaint was subjected to preliminary review, pursuant to LR 4.3.  The preliminary review of the initial complaint resulted in an order dismissing certain claims, see Order (doc. no. 27), including the claim that Officer Hujsak violated Podkulski's federal rights by threatening to file disciplinary charges against him for asserting grievances.

**Claims**

After review of plaintiff's first amended complaint (doc. no. 23), the court finds that the claims are appropriately construed, for all purposes in this case, as follows:

> 1.  Defendants are liable under 42 U.S.C. § 1983 for violating Podkulski's Fourteenth Amendment rights in that: (a) Sgt. Ballis and Officer Donovan, on November 17, 2010, aware that Podkulski could have seizures, ordered him to sleep on the top bunk, which resulted in Podkulski injuring his back and neck when he fell to the floor that night; and (b) Officer Barbera and another officer, told by Podkulski that his cell was contaminated with another inmate's fecal matter and urine, refused Podkulski's request either to be moved to another cell or to clean up his cell, which caused Podkulski to be exposed to human waste for four days.
>
> 2.  Defendants are liable under 42 U.S.C. § 1983 for retaliating against Podkulski for exercising his First Amendment rights, in that (a) Officer Hujsak filed a disciplinary report against Podkulski because Podkulski submitted grievance forms, and Podkulski was found guilty on the charges in the disciplinary report and received a verbal reprimand and a warning not to file any other grievances; (b) a male sergeant threatened to place Podkulski in segregation and to beat him up if he filed

grievances; and (c) Sgt. Gordon, with the assistance of Officer Barbera, struck and maced Podkulski for telling other inmates how to file grievances and lawsuits.

3.   Defendants are liable to Podkulski under 42 U.S.C. § 1983, in that Sgt. Gordon, with the assistance of Officer Barbera, assaulted Podkulski, and subjected him to excessive force in violation of his Fourteenth Amendment due process rights, by striking and macing Podkulski.

## Discussion

I.   Endangerment

The constitution requires prison officials to take "reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832-33 (1994).  To establish an endangerment claim, an inmate must assert facts to demonstrate that, objectively, he was incarcerated "under conditions posing a substantial risk of serious harm," and that the involved prison officials knew of and disregarded an excessive risk to the inmate's safety.  Id. at 834; see also Mosher v. Nelson, 589 F.3d 488, 493 n.3 (1st Cir. 2009) (same standard applies to convicted prisoner's Eighth Amendment and pretrial detainee's Fourteenth Amendment endangerment claims).

To demonstrate deliberate indifference, a plaintiff must show that a prison official was subjectively aware of a substantial risk of serious harm, or was aware of facts giving rise to an inference that there was a substantial risk of

serious harm, and also that the prison official drew that inference when he or she failed to take reasonable measures to abate it. See Mosher, 589 F.3d at 494; see also Farmer, 511 U.S. at 847. If a risk is obvious, the trier may infer that a defendant knew of the risk, but proof that a risk was obvious does not necessarily establish the requisite scienter. See Farmer, 511 U.S. at 844 ("That a trier of fact may infer knowledge from the obvious . . . does not mean that it must do so.").

    A.   Top Bunk

Podkulski asserts that his due process right to safe conditions of confinement was violated when Sgt. Ballis and Officer Donovan ordered him to sleep on the top bunk on November 17, 2010. In a prior order (doc. no. 14), this court determined that the facts alleged were sufficient at this stage of the case to state a claim that certain officers, whose names were unknown, had violated Podkulski's federal rights by ordering him to sleep in the top bunk, under the circumstances. Podkulski has since identified those officers as Sgt. Ballis and Officer Donovan. The court therefore directs in an order issued this date, that the endangerment claim be served on those officers.

8

B.  Exposure to Human Waste

Podkulski has also asserted that his health and safety was endangered when he was placed in a cell on November 21, 2010, that had another inmate's urine and feces on the floor and smeared under the bed.  When he complained about the mess to Officer Barbera and another officer, both officers told Podkulski that they would not move him to another cell or clean up the waste.  The cell was eventually cleaned on November 24, 2010, after Podkulski – a pretrial detainee – had been exposed to human waste for four days.

The court has determined in a prior order (doc. no. 14) that the facts alleged in the complaint are sufficient to state a claim that the officers at issue knew of an obvious, serious risk to Podkulski's health, but failed to take reasonable measures to abate that risk for four days.  Podkulski has identified one of those officers as Officer Barbera. Accordingly, in an order issued on this date, the court has directed Officer Barbera to file a response to this claim.

II. Retaliation

To state a claim for retaliation for the exercise of First Amendment rights, an inmate must allege: (1) that the conduct which led to the alleged retaliation was protected by the First

Amendment; (2) that he suffered adverse action at the hands of the prison officials; and (3) that there was a causal link between the exercise of his First Amendment rights and the adverse action taken.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).

    A.    Disciplinary Charge, Verbal Reprimand, and Warning

To satisfy the second element of a retaliation claim, Podkulski must show that defendants took an adverse action against him.  De minimis reactions to protected speech will not satisfy that requirement.  See Morris v. Powell, 449 F.3d 682, 685-86 (5th Cir. 2006).  A defendant's reaction to protected speech is not de minimis, however, if defendant's conduct would deter an individual of ordinary firmness from exercising his or her First Amendment rights.  See id.

Consideration of whether a disciplinary charge filed in response to protected speech is an adverse act requires an assessment of whether the charge and its disposition would be capable of deterring an inmate from exercising his or her First Amendment rights.  See, e.g., Bridges v. Gilbert, 557 F.3d 541, 555 (7th Cir. 2009) ("single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action"); Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir.

2002) (inmate subjected to retaliatory disciplinary charges and subsequent punishment that would deter an inmate of ordinary firmness from exercising his First Amendment rights may be entitled to relief under section 1983 (citing Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988))).

Here, Podkulski has asserted that Officer Hujsak ultimately filed disciplinary charges against Podkulski after threatening to do so if Podkulski filed grievances. Podkulski has not pleaded any facts, however, revealing the nature of the charges filed against him. A hearings officer found Podkulski guilty of the charges asserted in Hujsak's report, issued a verbal reprimand, and warned Podkulski that he would be sent to segregation if he filed more grievances. A finding of guilty on unspecified disciplinary charges, resulting only in a verbal reprimand, is a disposition of a charge that is not likely to deter an inmate of ordinary firmness from exercising his First Amendment rights. See Starr v. Dube, 334 F. App'x 341, 342 (1st Cir. 2009) (single disciplinary charge, carrying risk of severe penalties, which was dismissed by hearing officer one week after it was filed, was de minimis act). The warning about the risk of segregation, insofar as it did not specify any length of time during which Podkulski would be segregated, is similarly not

11

pleaded in a manner showing a likelihood that the warning would deter an inmate of ordinary firmness from exercising his First Amendment rights. Accordingly, the retaliation claim based on Hujsak's filing of a disciplinary charge, the guilty finding, the verbal reprimand, and the warning should be dismissed.

    B.   <u>Sgt. John Doe's Threat to Beat Up Podkulski</u>

Podkulski has alleged that on November 18, 2010, a male sergeant said that if Podkulski filed grievances, the officer would put him in segregation and "beat the shit" out of him. Podkulski abandoned his plan to file grievances at that point, out of fear for his safety.

As previously noted by this court, <u>see</u> Order (doc. no. 14), the facts alleged are sufficient to state a plausible claim of retaliation for Podkulski's engaging in protected activity. Because Podkulski has failed to identify the sergeant who threatened to beat him up, however, the court at this time should dismiss this claim without prejudice to Podkulski's filing a motion to amend the complaint if he identifies the sergeant who threatened him.

C.  Assault on Podkulski

This court previously directed service of a First Amendment retaliation claim, based on Sgt. Gordon's and Officer Barbera's alleged involvement in assaulting Podkulski for telling others how to file grievances and lawsuits.  See Order (doc. no. 14).  Those defendants filed their answer to the claim as asserted in the initial complaint (doc. no. 1).  Because Podkulski has reasserted this claim in the First Amended Complaint, Sgt. Gordon and Officer Barbera are directed, in an order issued on this date, to file an answer to the First Amended Complaint (doc. no. 23).

III. Excessive Force

As previously determined by this court, the allegations concerning an assault upon Podkulski, involving Sgt. Gordon and Officer Barbera, state a plausible excessive force claim under the Fourteenth Amendment.  See Order (doc. no. 14).  In the Order issued on this date, the court has directed Sgt. Gordon and Officer Barbera, who filed an answer to a similar claim in the initial complaint, to file an answer to this claim, as reasserted in the First Amended Complaint (doc. no. 23).

Conclusion

With the exception of the claims asserted against Officer FNU Barbera, Sgt. FNU Gordon, Sgt. FNU Ballis, and Officer FNU Donovan, in their individual capacities, all claims asserted in the First Amended Complaint (doc. no. 23) should be dismissed. In particular, all claims asserted against Officer Hujsak should be dismissed for failure to state a claim upon which relief may be granted.

In an order issued on this date, the court has directed service of the top bunk endangerment claim upon Sgt. Ballis and Officer Donovan. Additionally, the court has directed that Officer Barbera respond to the human waste endangerment claim, and that Sgt. Gordon and Officer Barbera file an answer to the excessive force and First Amendment retaliation claims asserted against them in the First Amended Complaint (doc. no. 23).

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st

Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

                                                          _____
                                                          Landya McCafferty
                                                          United States Magistrate Judge

May 3, 2012

cc:  Steve Podkulski, pro se
     John Curran, Esq.

LBM:nmd